UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

TIMOTHY ROSIN,

    Plaintiff,

v.

KIMBERLY HILL,

    Defendant.

Civil Action No. TDC-21-0983

## MEMORANDUM OPINION

Defendant Kimberly Hill, the former Superintendent of the Charles County Public Schools ("CCPS") in Charles County, Maryland, and the only remaining defendant in this case, has filed a Motion for Reconsideration, ECF No. 24, in which she requests that the Court revisit its prior decision denying in part Defendants' Motion to Dismiss and now grant that motion as to the claims against her. Having reviewed the submitted materials, the Court finds no hearing necessary. *See* Local Rule 105.6. For the reasons set forth below, the Motion for Reconsideration will be DENIED.

## BACKGROUND

On April 21, 2021, Plaintiff Timothy Rosin, who is currently employed by CCPS as a special education teacher, filed suit against Superintendent Hill, CCPS Deputy Superintendent Amy Hollstein, and the Board of Education of Charles County ("the County Board"), alleging due process violations and age discrimination under 42 U.S.C. § 1983 ("§ 1983") and state law claims of defamation and breach of contract based on his May 2018 demotion from Principal of Indian Head Elementary School to Vice Principal of Gale-Bailey Elementary School ("the Indian Head demotion") and his November 2019 demotion from Vice Principal to classroom teacher in the

wake of a playground incident at Gale-Bailey. After Defendants filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court issued a Memorandum Opinion granting in part and denying in part the Motion to Dismiss. *See Rosin v. Bd. of Educ. of Charles Cnty.*, No. TDC-21-0983, 2021 WL 4554342, at *10 (D. Md. Oct. 5, 2021). The relevant facts and procedural history of this case are set forth in in the Memorandum Opinion, which is incorporated by reference, and need not be restated here. *See id.* at *1-3. Specifically, the Court granted the Motion to Dismiss as to all claims except the § 1983 due process claim in Count 3 against Superintendent Hill relating to the Indian Head demotion.

Count 3 alleges that Superintendent Hill violated Rosin's rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution when "he was informed on May 7, 2018 that he was being demoted from principal to vice principal" because (1) "[t]he letter did not state a specific reason for [his] demotion"; and (2) it "did not identify a procedure for appealing the demotion." Compl. ¶¶ 176-77, ECF No. 1. In denying the Motion to Dismiss as to this claim, the Court held that it "may proceed based only on the alleged failure to provide Rosin with a reason for his demotion, not based on the alleged failure to notify him of his right to appeal that demotion." *Rosin*, 2021 WL 4554342, at *9. After requesting leave of the Court, Superintendent Hill filed the present Motion for Reconsideration.

## DISCUSSION

In her Motion, Superintendent Hill seeks reconsideration of the Court's decision denying the Motion to Dismiss as to Count 3 of the Complaint. Superintendent Hill argues that the Court applied the incorrect state statute in its analysis of Rosin's procedural due process claim and that dismissal of Count 3 is warranted because the applicable statute, Md. Code Ann., Educ. § 6-201 (West 2018), did not require Superintendent Hill to provide Rosin with the reason for his 2018

2

demotion from Principal to Vice Principal before the personnel action was taken. In opposing the Motion, Rosin argues that the Complaint adequately alleges that he had a property interest in maintaining his position as Principal of Indian Head and that his due process rights were violated by Superintendent Hill's failure to provide him with the reason for his demotion.

## I.    Legal Standard

Because the Court's ruling on the Motion to Dismiss was an interlocutory order, Superintendent Hill's Motion for Reconsideration is brought under Federal Rule of Civil Procedure 54(b). Under Rule 54, an interlocutory order "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Reconsideration under Rule 54(b) is at the sound discretion of the district court. *See Am. Canoe Ass'n, Inc. v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003). Although the Rule 54(b) standard is not as exacting as the Rule 59 and 60 standard, see *Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1472 (4th Cir. 1991), revisiting earlier rulings is still "subject to the caveat that 'where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.'" *Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) (quoting *Zdanok v. Glidden Co., Durkee Famous Foods Div.*, 327 F.2d 944, 953 (2d Cir. 1964)). Thus, a motion for reconsideration is "not the proper place to relitigate a case after the court has ruled against a party, as mere disagreement with a court's rulings will not support granting such a request." *Lynn v. Monarch Recovery Mgmt.*, 953 F. Supp. 2d 612, 620 (D. Md. 2013). Otherwise, "there would be no conclusion to motions practice, each motion becoming nothing more than the latest installment in a potentially endless serial that would exhaust the resources of the parties and the court." *Potter v. Potter*, 199 F.R.D. 550, 553 (D. Md. 2001).

3

## II. Procedural Due Process

In denying the Motion to Dismiss as to the due process claim against Superintendent Hill, the Court relied on section 6-202 of the Education Article of the Maryland Code ("Section 6-202") in concluding that Rosin had a due process property interest in his position as Principal of Indian Head at the time of his 2018 demotion. This provision states that "[o]n the recommendation of the county superintendent, a county board may suspend or dismiss a teacher, principal, supervisor, assistant superintendent, or other professional assistant for" . . . "[i]mmorality," "[m]isconduct in office," "[i]nsubordination," "[i]ncompetency," or "[w]illful neglect of duty," and that "[b]efore removing an individual, the county board of education shall send the individual a copy of the charges against the individual and give the individual an opportunity within 10 days to request" a hearing. Md. Code Ann., Educ. § 6-202(a)(1)–(2). Citing to decisions of the Maryland State Board of Education (the "MSBE"), Superintendent Hill argues that section 6-201 of the Education Article ("Section 6-201")—rather than Section 6-202—applies to Rosin's demotion from Principal to Vice Principal because it qualifies as a transfer rather than a suspension or dismissal. Section 6-201 provides that as to "[a]ll principals, teachers, and other certificated personnel," "the county superintendent shall: (i) Assign them to their positions in the schools; (ii) Transfer them as the needs of the schools require; (iii) Recommend them for promotion; and (iv) Suspend them for cause and recommend them for dismissal in accordance with § 6-202 of this subtitle." Md. Code Ann., Educ. § 6-201(b)(2). *See, e.g., Brown v. Prince George's Cnty. Bd. of Educ.*, Opinion No. 01-21 at 5 (MSBE June 20, 2001) (holding that Section 6-201 applied in the context of a superintendent's decision to reassign a teacher from her position as Supervisor of Mathematics to Regional Instructional Specialist). Accordingly, Superintendent Hill asserts that Rosin's claim should be dismissed because he was provided with all of the process due to him under Section 6-

4

201, particularly because that provision grants the superintendent the authority to "[t]ransfer" a principal "as the needs of the schools require." Md. Code Ann., Educ. § 6-201(b)(2)(ii).

This reading, which equates a demotion resulting in a reduction in pay with a lateral transfer, is not consistent with the clear distinction in the plain meaning of these terms or the way in which such terms have been defined elsewhere in state law. Neither Section 6-202 nor Section 6-201 use the word "demotion," but the State Personnel and Pensions Article of the Maryland Code defines "[r]eassignments" and "transfers" as relating to movement to a "position of equal grade and service" or "the same grade," Md. Code Ann., State Pers. & Pens. § 7-602 (West 2015), while it separately provides that to "demote [an] employee to a lower pay grade" constitutes a "disciplinary action," *id.* § 11-104(5).

Nevertheless, even if Rosin's demotion were deemed to qualify as a transfer rather than a dismissal from his position as a Principal within the meaning of Sections 6-201 and 6-202, it does not necessarily follow that, as Superintendent Hill argues, Rosin has no viable due process claim. A procedural due process claim requires consideration of two questions. "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the state; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (internal citation omitted).

### A.   Property Interest

The United States Supreme Court has held that to "have a property interest in a benefit" protected by procedural due process, a person must have "a legitimate claim of entitlement to it." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it." *Id.* Importantly, such "[p]roperty interests . . . are not created by the Constitution," but rather "they are created and

5

their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* A property interest can be created by statute, administrative standard, contract, or implied promise. *See id.* at 576–77.

Here, Rosin has sufficiently alleged a property interest in his position as a Principal established by state law and contract. Regardless of whether a demotion qualifies as a dismissal under Section 6-202, state law is not devoid of protections for school employees from demotions. Section 4-205(c) of the Education Article, which provides that a "decision of a county superintendent may be appealed to the county board" and then "may be further appealed to the State Board," Md. Code Ann., Educ. § 4-205(c)(3), has been interpreted by the MSBE to allow school employees to appeal transfers and demotions. *See Rawles v. Prince George's Cnty. Bd. of Educ.*, Opinion No. 21-54 at 6, 8 (MSBE Dec. 7, 2021) (considering the appeal of an assistant principal demoted to teacher and affirming the demotion because it was not "arbitrary or unreasonable"). Specifically, the MSBE noted that even though a Chief Executive Officer of a county school system has "broad authority to transfer personnel to positions of lower rank," the school must still "be able to articulate some basis for the reassignment that is neither arbitrary, unreasonable, nor illegal." *Id.* at 8. The fact that state law affords school personnel the right to contest a demotion through an appeal process and to be free from an arbitrary or unreasonable demotion demonstrates the existence of a property interest. *See Perry v. Sindermann*, 408 U.S. 593, 601 (1972) (holding that a "person's interest in a benefit is a 'property' interest for due process purposes if there are . . . rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing"). Notably, a judge in this District has previously found that a demotion of a public school teacher to a lower ranked position implicated a protected due process property interest. *See Baker v. Kent Cnty. Bd. of Educ.*, No. WMN-07-CV-0824, 2008

6

WL 11422694, *6-7 (D. Md. Oct. 15, 2008) (holding that "demotion to a second class teaching certificate," which resulted in a loss of compensation, deprived a teacher of a protected property interest). Where state law has provided procedural protections against a demotion of a public school employee, there is a due process property interest in maintaining that position.

Further, in opposing the Motion, Rosin has identified another source of a property interest in his position as Principal of Indian Head, specifically, the Collective Bargaining Agreement (the "CBA") between the County Board and the Education Association of Charles County, which specifically protects CCPS administrators from involuntary demotions without notice of the reason. A statement of employee rights agreed to by management, such as a CBA or an employment dispute resolution plan, can provide the basis for a protected property interest. *See, e.g., Strickland v. United States*, 32 F.4th 311, 352 (4th Cir. 2022) (holding that an employment dispute resolution plan adopted by a court provided employees "with substantive rights that are protected property interests" for purposes of a due process claim); *Cheli v. Taylorville Cmty. Sch. Dist.*, 986 F.3d 1035, 1037 (7th Cir. 2021) (holding that a collective bargaining agreement which established that an employee could not be terminated except "for reasonable cause . . . created a protected property interest for which he was entitled to due process"). Where the CBA is a contract entered into by a governmental entity, and Superintendent Hill has not disputed the authenticity of the CBA submitted by Rosin, the Court may consider whether it provides additional support for Rosin's asserted property interest. *See Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015) ("[C]ourts at any stage of a proceeding may judicially notice a fact that is not subject to reasonable dispute, provided that the fact . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." (quoting Fed. R. Evid. 201)).

Here, the CBA explicitly enumerates certain "employee rights" applicable to principals, including the right to "be afforded due process prior to disciplinary ... action" and provides that "[a]n involuntary transfer will be made only after a meeting between the employee and his or her supervisor, at which time the employee will be notified of the reason for the transfer," and that an employee who objects may then "request a meeting with the Superintendent." CBA Arts. 1(J), 6(D), 9(A). Such rights provide Rosin with an additional basis for a "legitimate claim of entitlement" sufficient to establish a property interest in his position. *Roth*, 408 U.S. at 577. They do so even though they are not so robust as to provide a substantive right to continued employment in the position. *See Strickland*, 32 F.4th at 349-50 (finding that an employment dispute resolution plan and its delineated procedures created a property interest in being free from discrimination and harassment at work, even without affording a right to continued employment). Thus, even to the extent that Section 6-202 is not directly applicable to Rosin's demotion, Rosin has still stated a plausible claim that he has a protected due process property interest in not being demoted from his Principal position.

### B.  Due Process

The second part of a procedural due process analysis is assessing whether "the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (internal citation omitted). Superintendent Hill argues that because Section 6-201 provides no identified due process protections against a "transfer," Rosin cannot plausibly claim that his due process rights were violated when he was demoted without any stated reason. This argument is flawed because it collapses the two-part due process inquiry into a single step and equates the stated procedures, or lack of procedures, articulated in a state statute with the constitutionally sufficient procedures. In *Cleveland Board of Education v. Loudermill*, 470 U.S.

532 (1985), the Supreme Court rejected this view when it held that while property interests "are created from an independent source such as state law," *id.* at 538 (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)), "[t]he right to due process 'is conferred, not by legislative grace, but by constitutional guarantee,'" so that once a property interest in public employment is conferred, a state "may not constitutionally authorize the deprivation of such an interest . . . without appropriate procedural safeguards,'" *id.* at 541 (quoting *Arnett v. Kennedy*, 416 U.S. 134, 167 (1974) (Powell, J., concurring)). Based on this principle, the Court further held that "once it is determined that the Due Process Clause applies, 'the question remains what process is due.' The answer to that question is not to be found in the [state] statute." *Id.* at 541 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). Similarly, in *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982), the Supreme Court stated that in the context of due process claims:

> Because minimum [procedural] requirements are a matter of federal law, they are not diminished by the fact that the State may have specified its own procedures that it may deem adequate for determining the preconditions to adverse official action. Indeed, any other conclusion would allow the State to destroy at will virtually any state-created property interest.

*Id.* at 432. Thus, under *Loudermill* and *Logan*, the contours of Rosin's rights under the Due Process Clause of the Fourteenth Amendment are not necessarily determined by the procedures described in Section 6-201, Section 6-202, Section 4-205 or any other state statute, but by federal constitutional principles of due process.

Superintendent Hill also argues that to the extent that the CBA may establish a property right, Rosin cannot establish a violation of due process because the CBA itself provides that the sole remedy for alleged breaches of its terms is binding arbitration. *See* CBA Art. 3. However, the United States Court of Appeals for the Fourth Circuit recently considered and rejected a similar argument in *Strickland v. United States*, 32 F.4th 311, 351-52 (4th Cir. 2022). In *Strickland*, the

9

defendants argued that the property interests created by an employment dispute resolution plan ("the Plan") "d[id] not exist independent of the Plan's procedures," because the Plan itself stated that it was the exclusive remedy for enforcing the rights granted by the Plan. *Id.* at 351. Citing *Loudermill*, the court rejected this argument on the ground that "[d]efendants could of course have chosen not to provide a [property] right to . . . employees," but "once they did so by adopting the EDR Plan, 'the floor for the procedures due is set by the federal Constitution,'" not by the terms of the Plan itself. *Id.* at 352 (quoting *Stephany v. Wagner*, 835 F.2d 497, 500 (3d Cir. 1987)). "'[M]inimum procedural requirements are a matter of federal law' and 'are not diminished by the fact that the State may have specified its own procedures that it may deem adequate for determining the preconditions to adverse official action.'" *Id.* (quoting *Loudermill*, 470 U.S. at 541). Thus, neither the procedures nor the lack of procedures in Section 6-201 or the CBA necessarily resolve the question of what is required to vindicate the property interested conferred on Rosin.

Based on these principles, Superintendent Hill's Motion, which is predicated on the lack of any process afforded by Section 6-201, necessarily fails. Rather, at this early stage, where Rosin has alleged that he was demoted from Principal to Vice Principal without any stated reason or any other process, the Court will not find as a matter of law that Rosin cannot succeed on his claim that the failure to provide him with the specific reason for his demotion violated due process. Notably, the CBA, which provides that an employee has the right to "be afforded due process prior to disciplinary . . . action," specifically requires that "[a]n involuntary transfer will be made only after . . . the employee [is] notified of the reason for the transfer." CBA Arts. 6(D), 9(A). Accordingly, the Court concludes that it should not reconsider or revise its prior denial of the Motion to Dismiss Rosin's due process claim against Superintendent Hill relating to the Indian Head demotion. *See Rosin*, 2021 WL 4554342, at *9.

10

## CONCLUSION

For the foregoing reasons, Superintendent Hill's Motion to Reconsideration will be DENIED. A separate Order shall issue.

Date: August 22, 2022

THEODORE D. CHUANG
United States District Judge