## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

TIMOTHY ROSIN,

     Plaintiff,

     v.

KIMBERLY HILL,

     Defendant.

Civil Action No. TDC-21-0983

## MEMORANDUM OPINION

Plaintiff Timothy Rosin has filed this civil action pursuant to 42 U.S.C. § 1983 in which Defendant Kimberly Hill, Superintendent of the Charles County Public Schools ("CCPS"), is the sole remaining defendant. Rosin alleges a violation of his due process rights under the Fourteenth Amendment to the United States Constitution based on his demotion from his position as the principal of Indian Head Elementary School to vice principal of Gale-Bailey Elementary School in May 2018. Superintendent Hill has filed a Motion for Summary Judgment, which is fully briefed. Having reviewed the briefs and submitted materials, the Court finds that no hearing is necessary. See D. Md. Local R. 105.6. For the reasons set forth below, the Motion for Summary Judgment will be GRANTED.

## BACKGROUND

The Court has issued two prior opinions in this case, one resolving a Motion to Dismiss and one resolving Superintendent Hill's Motion for Reconsideration of that ruling, both of which are incorporated by reference. *Rosin v. Bd. of Educ. of Charles Cnty.* ("*Rosin I*"), No. TDC-21-0983, 2021 WL 4554342 (D. Md. Oct. 5, 2021); *Rosin v. Hill* ("*Rosin II*"), No. TDC-21-0983, 2022 WL 3621478 (D. Md. Aug. 23, 2022).

Rosin served as the principal of Indian Head Elementary School ("Indian Head"), located in Indian Head, Maryland, from 2013 to 2018.  During his five-year tenure as principal at Indian Head, CCPS provided him with five annual performance evaluations corresponding to each school year.  In his first three evaluations, relating to the 2013-2014, 2014-2015, and 2015-2016 school years, Rosin was rated "highly effective."  Joint Record ("J.R.") 42, 105-06, ECF No. 63.  For both the 2016-17 and 2017-18 school years, Rosin was rated "effective."  J.R. 107-10.

## I.      The Personnel Action

On April 12, 2018, Superintendent Hill, CCPS Deputy Superintendent Amy Hollstein, and CCPS School Administrator Linda Gill met with Rosin and his union representative, Daniel Besseck.  At this meeting, Hill verbally informed Rosin that, by her decision, CCPS would "transfer or reassign" Rosin "from the principalship at Indian Head to a vice principalship" at a different elementary school, which had not yet been identified.  J.R. 39.  Hill also told Rosin that his salary would be held intact for two years.  At her deposition, Hill testified that this decision was made "under the authority of [section] 6–201" of the Education Article of the Maryland Code ("Section 6–201"), Md. Code Ann., Educ. § 6–201(b)(2)(ii) (LexisNexis 2022), which she described as providing a school superintendent with the "authority to transfer and reassign employees for the good of the school district."  J.R. 39.  Section 6–201 provides that: as to "[a]ll principals, teachers, and other certificated personnel," the county superintendent shall: "(i) Assign them to their positions in the schools; (ii) Transfer them as the needs of the schools require; (iii) Recommend them for promotion; and (iv) Suspend them for cause and recommend them for dismissal in accordance with § 6–202 of this subtitle."  Md. Code Ann., Educ. § 6–201(b)(2).

As reflected in contemporaneous notes taken by Besseck and Gill, Hill and the other CCPS officials discussed Rosin's performance as principal of Indian Head and some of the reasons for

2

the personnel action. At his deposition, Besseck testified that in informing Rosin of the transfer, Hill told Rosin that his principalship was "not strong at this time" and that the "evidence" did not show that he was the "right fit" or "right for [the] job." J.R. 10. In discussing some of the concerns about Rosin's performance as principal, Hill or one of the other CCPS officials stated that Rosin was not effectively utilizing available "Title I" funds, consisting of additional grant funding provided to schools with a certain percentage of children living in poverty, and that he may not have understood how to use those funds. J.R. 10. In addition, they discussed concerns raised in a teacher survey, including that teachers believed that the school administration's response to discipline was leading to lower achievement, and that professional development activities were "scattered." J.R. 9. According to Gill's notes, Hill told Rosin that his skills "don't seem to have evolved" with the changing needs of the principal position, and that his skills were "best used" as a vice principal. J.R. 33.

On May 7, 2018, Rosin received a letter from Nikial Majors, the CCPS Executive Director of Human Resources. The letter stated that Hill "is reassigning you in the best interest of the school system to a vice principal position at Gale-Bailey Elementary School ("Gale-Bailey") for the 2018-2019 school year." J.R. 44. The letter also informed Rosin that his salary would be frozen at his current level as a principal for two school years if he "remain[ed] employed as a vice principal in good standing," after which the salary would be "adjusted appropriately for the position you are then serving." J.R. 89. According to Rosin, his salary was frozen consistent with the terms of the letter for the first full year after the personnel action, the 2018-2019 school year at Gale-Bailey, and for approximately half of his second school year at Gale-Bailey, until his reassignment to a teaching position at John Hanson Middle School following a playground incident at Gale-Bailey.

3

Hill did not consider this personnel action to implicate the procedural requirements of section 6–202 of the Education Article ("Section 6–202"), which expressly provides procedures to govern the suspension or dismissal of a public school employee, including a "teacher, principal, supervisor, assistant superintendent, or other professional assistant," by the relevant county board of education "[o]n the recommendation of the county superintendent." Md. Code Ann., Educ. § 6–202(a)(1)(i)–(v).   Under this provision, employees may be suspended or dismissed for "[i]mmorality," "[m]isconduct in office," "[i]nsubordination," "[i]ncompetency," or "[w]illful neglect of duty." *Id.* Before such an employee may be removed from a position for such a reason, "the county board [of education] shall send the individual a copy of the charges against the individual" and give the individual an opportunity to request a hearing before the Board or an arbitrator. *Id.* § 6–202(a)(2)(i). At her deposition, Hill stated that the personnel action "was not a disciplinary action [or] a termination" of Rosin's employment, J.R. 40, and that it was "never my intention to suspend or dismiss" Rosin. J.R. 39. As a result, Hill did not inform Rosin of any "formal charges" from among the potential reasons for suspension or dismissal set forth in Section 6–202. *Id.*

## II.   Procedural History

On April 21, 2021, Rosin filed suit against Hill, Hollstein, and the Board of Education of Charles County ("the Board"), alleging due process violations and age discrimination under 42 U.S.C. § 1983 ("§ 1983") and state law claims of defamation and breach of contract based on the May 2018 demotion from principal of Indian Head to vice principal of Gale-Bailey ("the Indian Head demotion") and his November 2019 demotion from vice principal of Gale-Bailey to classroom teacher. After Defendants filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court issued a memorandum opinion granting in part and denying in part

4

the Motion. *See Rosin I*, 2021 WL 4554342, at \*10.  The Court granted the Motion to Dismiss as to all claims except the § 1983 due process claim against Hill relating to the Indian Head demotion. *See id.*  In that claim, Rosin alleged that Hill violated his due process rights when "he was informed on May 7, 2018 that he was being demoted from principal to vice principal" because (1) "[t]he letter did not state a specific reason for [his] demotion"; and (2) it "did not identify a procedure for appealing the demotion."  Compl. ¶¶ 176-77, ECF No. 1.  In denying the Motion to Dismiss as to that claim, the Court held that Rosin "may proceed based only on the alleged failure to provide Rosin with a reason for his demotion, not based on the alleged failure to notify him of his right to appeal that demotion."  *Rosin I*, 2021 WL 4554342, at \*9.  Hill later filed a Motion for Reconsideration, which was denied.  *Rosin II*, 2022 WL 3621478, at \*1.  Hill then filed an Answer, and the parties engaged in discovery.

## DISCUSSION

In the present Motion, Hill seeks summary judgment in her favor pursuant to Federal Rule of Civil Procedure 56 on the sole claim remaining in this case, the § 1983 due process claim against her based on the Indian Head demotion in May 2018.  As grounds, Hill argues that (1) Rosin did not have a property interest in his position as a principal under Maryland law; (2) Rosin was not deprived of any property interest; (3) even if Rosin had been deprived of a property interest, he was provided sufficient due process; and (4) in the alternative, Hill is entitled to qualified immunity.  In *Rosin I* and *Rosin II*, the Court found that Rosin had stated a plausible claim that he had a property interest in his position as a principal. *Rosin I*, 2021 WL 4554342, at \*8; *Rosin II*, 2022 WL 3621478, at \*3-4.  The Court need not decide whether the record evidence is sufficient to support a finding that he had such a property interest because, even assuming that he did, summary judgment is warranted because the undisputed evidence demonstrates that he received

5

notice of the reasons for the demotion, and any claim that additional procedural steps were required is barred by qualified immunity.

## I.     Legal Standard

Under Rule 56, the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In assessing such a motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  The Court may rely only on facts supported in the record, not simply assertions in the pleadings.  *Bouchat v. Balt. Ravens Football Club.*, 346 F.3d 514, 522 (4th Cir. 2003).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Anderson*, 477 U.S. at 248.  A dispute of material fact is "genuine" only if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party.  *Id.* at 248-49.

## II.    Notice of Reasons

In the Complaint, as to the only remaining cause of action, Rosin asserts in Count 3 that his due process rights were violated because he was demoted from principal to vice principal without receiving a "specific reason" for his demotion and without being informed of a procedure by which to appeal the demotion.  Compl. ¶ 176.  In denying the Motion to Dismiss as to this claim, the Court limited the claim to whether Rosin's due process rights were violated because he did not receive a specific reason for the demotion.  *Rosin I,* 2021 WL 4554342, at \*9.  As noted in *Rosin II*, there are various potential sources of a due process right to notification of the reason for the demotion.  For example, although Section 6–201 does not explicitly impose any notice requirement, Article 9 of the collective bargaining agreement ("CBA") between the Board and the

6

Education Association of Charles County, which was in effect at the time of the Indian Head demotion, provides that a school employee may not be subjected to an involuntary transfer or demotion "without notice of the reason" for the transfer. *Rosin II*, 2022 WL 3621478, at \*4. Specifically, the CBA provides that "[a]n involuntary transfer will be made only after a meeting between the employee and his or her supervisor, at which time the employee will be notified of the reason for the transfer," and that an employee who objects may then "request a meeting with the Superintendent." J.R. 4; *see Strickland v. United States*, 32 F.4th 311, 352 (4th Cir. 2022) (holding that an employment dispute resolution plan adopted by a court provided employees "with substantive rights that are protected property interests" for purposes of a due process claim); *Cheli v. Taylorville Cmty. Sch. Dist.*, 986 F.3d 1035, 1037 (7th Cir. 2021) (holding that a collective bargaining agreement which established that an employee could not be terminated except "for reasonable cause . . . created a protected property interest for which he was entitled to due process").

Upon review of the record developed during discovery, the Court finds that, even assuming that Rosin had a property interest in his position as a principal and that due process required a meeting and notice of the reason for the demotion, pursuant to the CBA or otherwise, there is no genuine issue of material fact over whether Rosin received such notice. The record evidence, including the deposition testimony of Hill and Besseck, establishes that Hill, accompanied by Hollstein and Gill, had a meeting with Rosin on April 12, 2018 and directly informed him that he was being reassigned from principal of Indian Head to vice principal of Gale-Bailey. In that meeting, Hill generally asserted that Rosin was being reassigned to vice principal because his principalship was "not strong at this time" and that the "evidence" did not show that he was the "right fit" or "right for [the] job." J.R. 10. Hill provided certain specific facts supporting this

7

conclusion, including that he had not effectively used Title I funds and did not appear to understand how to use them, that there were concerns raised in a teacher survey, particularly in relation to student disciplinary policies, and that his skills had not evolved to match the needs of the principal position. Thus, the record evidence establishes that Rosin was provided the reasons for the personnel action. To the extent that the CBA requires that a school employee facing an involuntary transfer must also be notified of the right to request a meeting with the superintendent, that requirement was satisfied by the fact that Rosin was, in fact, provided with such a meeting.

In opposing the Motion, Rosin primarily provides reasons for his belief that the personnel action was unjustified, including because it was unfair to hold Rosin responsible for teacher dissatisfaction with student disciplinary policies where a recently enacted state law limiting the suspension or expulsion of disruptive students had curtailed his ability to remove students from the classroom. He asserts that the demotion was therefore arbitrary and capricious and violated a Maryland regulation providing that when the State Board of Education considers the appeal of a decision by a local board of education, the State Board may not substitute its judgment for that of the local school board unless the decision was "arbitrary or unreasonable" in that it was "contrary to sound educational policy" or "a reasoning mind could not have reasonably reached the conclusion the local board or local superintendent reached." Md. Code Regs. § 13A.01.05.06(B) (2023). This argument is unpersuasive because Rosin's claim as articulated in the Complaint is one of procedural due process arising from an alleged failure to provide notice of the reason for the personnel action. *See* Compl. ¶¶ 176-77. Rosin never alleged in the Complaint a claim that the action violated this regulation or any other substantive claim against the personnel action. A plaintiff may not amend the complaint in a brief opposing a motion for summary judgment. *Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 455 F. Supp. 2d 399, 435-36 (D. Md. 2006).

8

Significantly, Rosin has not shown how his claim that his demotion was arbitrary and capricious within the meaning of the identified state regulation constitutes a violation of procedural due process under the Constitution. He did not claim, and there is no authority supporting the argument, that procedural due process is violated solely because the plaintiff believes that the reasons for a personnel action were not justified.

Notably, in his deposition, Rosin specifically stated that he did not dispute Hill's account of what was said at the April 12, 2018 meeting, or the notes taken by Besseck and Gill, which memorialize some of the stated reasons for the personnel action. Accordingly, the Court finds that there is no genuine issue of material fact on the issue of whether Rosin received notice of the reasons for his demotion to vice principal. Where this alleged failure was the basis of Rosin's due process claim, the Court will grant summary judgment on Count 3.

## III.   Qualified Immunity

In the alternative, to the extent that Rosin may argue that Hill's stated reasons were insufficient, or that additional process was required, Court finds that Hill is entitled to qualified immunity from such claims because there is no clearly established law requiring additional safeguards. As stated in *Rosin I*, when qualified immunity is asserted, a court must consider two questions: (1) whether the facts, viewed in the light most favorable to the plaintiff, show that the official violated a constitutional right; and (2) "whether the right was clearly established," that is, "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *see Henry v. Purnell*, 501 F.3d 374, 377 (4th Cir. 2007). For qualified immunity to apply, only one of the questions has to be resolved in favor of the defendant. *See Henry*, 501 F.3d at 377. Courts may address the questions in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

9

Whether a right was "clearly established" turns on whether "the contours of the right [were] sufficiently clear that a reasonable official would understand that what [the official] is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). In assessing this question, a court generally considers whether the right is found in "cases of controlling authority in [this] jurisdiction"—here, the United States Supreme Court, the United States Court of Appeals for the Fourth Circuit, and the Supreme Court of Maryland—but it may also consider "a consensus of cases of persuasive authority from other jurisdictions" as a basis to find that the conduct was barred by clearly established law. *Booker v. S.C. Dep't of Corrs.*, 855 F.3d 533, 538-39 (4th Cir. 2017) (citations omitted). A court seeks to identify a case in which a government official "acting under similar circumstances ... was held to have violated" the right. *White v. Pauly*, 137 S. Ct. 548, 552 (2017); *see Safar v. Tingle*, 859 F.3d 241, 246 (4th Cir. 2017). Although the facts of such a case need not be "identical" to the present facts, *Safar*, 859 F.3d at 248, it should be "obvious" that the case applies to the facts, *White*, 137 S. Ct. at 552.

Here, to the extent that Rosin could argue that the reasons for his reassignment offered by Hill were insufficiently specific, he has not shown that there is clearly established law requiring any greater level of specificity, and the Court has found none. In particular, to the extent that Rosin argues that Hill had to provide the type of notice referenced in Section 6–202, which requires that when suspending or demoting a principal or comparable official, the Board must "send the individual a copy of the charges against the individual" consisting of a charge of immorality, misconduct in office, insubordination, incompetency, or willful neglect of duty, as well as notice of the right to a hearing before the Board, Md. Code Ann., Educ. § 6–202(a), there is no clearly established law providing that due process requires these protections under the circumstances present here. First, although the Court relied in part on Section 6–202 in concluding that Rosin

10

had sufficiently alleged a property interest in his position as a principal, the Court also held that the specific procedural protections required are a matter of federal law. *See Rosin II*, 2022 WL 3621478, at \*3-5 (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985) and *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 432 (1982)). Rosin has not identified any controlling authority or consensus of persuasive authority establishing that, as a matter of federal law, when a school employee is being reassigned or demoted to a lower position but with the same pay for a temporary period of time, any procedural protections beyond notice of the reason for the action and a meeting with the superintendent are constitutionally required. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985) ("The essential requirements of due process . . . are notice and an opportunity to respond.).

Second, there is no controlling authority definitively establishing that the protections of Section 6–202 are required in the scenario at issue here. Although the Court has previously outlined how a demotion of a principal to a lower-level position that eventually results in lower pay arguably goes beyond a mere transfer or reassignment covered by Section 6–201, and instead could be deemed to be the equivalent of a suspension or dismissal subject to the protections of Section 6–202, there is no controlling authority on this issue. *See Rosin I*, 2021 WL 4554342, at \*8; *Rosin II*, 2022 WL 3621478, at \*2-3. Indeed, Hill has cited an administrative ruling that it argues supports the position that Section 6–202 does not apply to such a demotion. *See, e.g.*, *Hayes v. Bd. of Educ. of Carroll Cnty.*, MSBE Op. No. 719, at 725 (Jan. 31, 1978).

Finally, the record evidence developed in discovery shows that under the specific facts of this case, a reasonable official in Hill's position would not necessarily understand that failing to meet the notice requirements of Section 6–202 in this instance would violate due process. *See Anderson*, 483 U.S. at 640. While Section 6–202 relates to "[g]rounds for discipline," Md. Code

11

Ann., Educ. § 6–202, Hill testified that her decision to reassign Rosin was not disciplinary and was based on her belief that he "was not as effective" in the principal role but that "he still had many skills and talents to offer the children of our district and I felt that those skills and talents could be best utilized in the vice principal position." J.R. 40. Besseck, Rosin's union representative, acknowledged that Hill's action relating to Rosin was an administrative transfer permitted by Section 6–201, and that it was "non-punitive" and "non-disciplinary." J.R. 13. Under these circumstances, the Court concludes that, at a minimum, there is no clearly established law demonstrating that a reasonable official in Hill's position would necessarily understand that the personnel action taken against Rosin was covered by Section 6–202, or that the notice requirements of that provision are required by due process.

Thus, the Court finds that summary judgment in favor of Hill is also warranted because she has qualified immunity from Rosin's due process claim.

## CONCLUSION

For the foregoing reasons, Hill's Motion for Summary Judgment will be GRANTED. A separate Order shall issue.

Date:   September 10, 2024

THEODORE D. CHUANG
United States District Judge

12